[Civ. No. 17746. Second Dist., Div. One. Feb. 13, 1951.]

OPAL M. PASCOE et al., Appellants, v. SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation), Respondent.

Leonard Wilson, Ben Cohen and Charles H. Lynch for Appellants.

Bruce Renwick, Rollin E. Woodbury and E. W. Cunningham for Respondent.

HANSON, J. pro tem.—The crucial question for decision in this case is whether the *third* amended complaint sufficiently stated a cause of action for negligence. The trial court held it did not and so sustained a general and special demurrer without leave to amend.

From the allegations of the complaint it appears that the Winston Brothers Company, the employer of plaintiff's decedent, entered into a contract sometime prior to March 1,

1948, with the State of California to enlarge and pave for a short distance Highway No. 99. On the latter date the Winston Brothers Company notified respondent Southern California Edison Company of the fact of its contract and that it would immediately start to widen and pave the highway and in the course of its operations would blast portions of it underneath the high tension wires of the defendant where the same crossed the highway some five miles north of Castaic. Parenthetically, it may be said the notification did not specify the date on which the blasting would actually begin *under* the high tension lines, much less it did not request that the respondent should take any affirmative action, such for instance, as shutting off the electricity of the transmission line or that it should insulate the wires over the highway or otherwise prepare its wires against the blasting proposed. Indeed, the notification, for aught that appears, did not indicate the manner, method or extent of the blasting charges that would be employed or that such charges would in any manner affect or endanger the defendant's lines.

Without any further notice or request to the respondent, the Winston Brothers Company on April 8th (about six weeks after its notification) directed its employee, the plaintiff's decedent, to blast with dynamite the portion of the highway in question.

On that date plaintiff's decedent placed a charge of dynamite in a hole prepared for it and attached to the dynamite certain fuse wires which evidently ran to a fuse box from which he contemplated setting off the charge. Where this box was located on the surface of the ground with respect to the overhead high tension wires is not disclosed by the complaint. The plaintiff's decedent thereupon caused an electrical current to pass presumably from the fuse box to the fuse wire which ignited the dynamite. The explosion not only caused a portion of the earth's surface to be thrown upwards toward the high tension wires, but the fuse wire as well. This caused high voltage electricity to flow or arc from the high tension wires down along the fuse wire electrocuting plaintiff's decedent.

On the facts thus narrated plaintiff contends that the defendant was guilty of negligence which proximately caused the death of plaintiff's decedent. Specifically plaintiff charges that defendant was negligent in four particulars: (1) That it failed to remove the high tension wires from the site of the blasting operations; (2) that it failed to insulate the wires; (3) that despite the notice it continued to transmit electricity

through the wires; and (4) that it failed to warn decedent of the dangerous arcing propensities of the electricity in said wires.

We turn first to the consideration of the legal duties owed by the defendant to the plaintiff under the circumstances as above narrated. First, it seems of some importance to note that one cannot well plead that another owes him a legal duty, where the law is otherwise; in short, one may not by the mere device of an allegation create a legal duty that otherwise does not exist. Hence, the allegations of the complaint may not transcend, but instead must be measured by what is the law. The defendant here was under a duty to maintain its highly charged high tension wires as they crossed the state highway at a height that would not endanger the normal use of the highway for travel or other proper purposes. The defendant was bound to anticipate such normal use and thus place its wires at a height that would be regarded as reasonably safe. Under the circumstances here narrated it was not obligated to insulate its wires if they were placed at a distance above the highway where the current in the wires would not interfere at all with the normal and proper uses of the highway of a character that reasonably could be anticipated. In each case this is a question of degree. Maintaining a highly charged wire uninsulated at a point where it could be touched by a hand reaching out to it from an upstairs window is negligence; not so what the defendant did here.

 The complaint does not tell us the height of the wires above the highway and plaintiff declined to allege that fact despite the court's orders consistently sustaining special demurrers for such failure. It was the duty of the plaintiff to allege this ultimate fact so that the court could rule whether or not a failure to insulate could or could not be regarded as negligence under the circumstances. Accordingly on the facts that were alleged no negligence for failure to insulate the wires was shown.

Another specific ground upon which negligence of the defendant was based is the claim that inasmuch as decedent's employer had on March 1, 1948, advised the defendant that it would *immediately* proceed to blast the highway under the high tension wires respondent should have cut out the current on a date and hour some *six weeks later* when the plaintiff's

decedent for the first time unknown to the respondent actually began his blasting operations. At best, the notification of decedent's employer was one of advice. It did not request that the defendant upon its receipt should immediately cease passing current through the wire or that it should cease doing so for a period of six weeks when, at the contractor's convenience, it might be important that it do so. ■ As we view the facts narrated we fail to see that the defendant had any legal duty to give the notification even passing consideration, much less to act on it at the time it was received or later.

■ The State of California, it is true, had let a contract to decedent's employer under the terms of which the employer was obligated to widen and pave the highway for a price. But this did not vest in the contractor any right to demand that the defendant should cease to send current through the wires while one of its workmen was working underneath them.

■ If the employer chose to widen the highway by blasting he did so at his own peril with a liability for damages for any property injured, such as the property of the defendant.

■ The defendant was not under any duty to raise its wires, to insulate them or to cut out the current therein to suit the economic necessities or convenience of the contractor. Undoubtedly any one of these objectives could have been achieved by contract—at a price to be paid by the contractor. If a contracter chooses to excavate by blasting a lot next to a 10-story building, it is plain he may not in behalf of himself and his employees merely give notice to the owner and if the owner fails to shore up the building sue for damages he may sustain if the wall in falling as a result of a blast crushes his equipment. (*Cf. Colton* v. *Onderdonk,* 69 Cal. 155 at page 159 [10 P. 395, 58 Am.St.Rep. 556] ; *McKenna* v. *Pacific Electric Ry Co.,* 104 Cal.App. 538 [286 P. 445].) An employee of such contractor would stand no better. There was then no legal duty on the part of the defendant to heed the advice of the contractor, contained in the notification of March 1, 1948. In view of what has been said it is not necessary for us to take judicial notice of the fact, if we are entitled to do so, which we do not decide, that the high tension line involved comes from the High Sierras and constantly serves an enormous population. The only legal duty disclosed by the complaint was a duty on the part of the contractor and his employee not to interfere with the high tension wires by blasting, but instead to have widened the highway by other methods of a kind and character that would not have done so.

■ Under the facts alleged by the complaint there was no legal duty on the part of the defendant to warn the decedent of the "arcing propensities of the electricity" carried in the high tension wires. The arcing propensity of electricity is a well-known fact in the physical world which must be deemed to be known to all capable workmen, and especially one employed as a "powder-man" by a highway contractor. Even if there had been a duty to warn, the complaint does not negative that the warning was not given to the Winston Brothers Company. Moreover, the complaint does not charge that any representative of defendant was present so the warning could have been given or that the defendant knew that the blasting was being done under its wires at the time or even that it was being done by plaintiff's decedent. The duty to warn, if duty there was, rested on the Winston Brothers Company and not on the defendant.

■ Upon the facts alleged we deem it plain that no legal charge of negligence is set forth in the complaint. ■ To raise an issue of negligence a complaint must allege the fact of action or nonaction relied upon and all facts necessary to render the fact proximately causal. The complaint falls far short of doing so.

Only one of the numerous decisions cited by counsel for appellant is pertinent enough to need comment. In *Jackson* v. *Utica Light & Power Co.*, 64 Cal.App.2d 885 [149 P.2d 748], the point decided was that the trial court had ruled correctly in denying a motion for judgment notwithstanding the verdict which was based on the theory that the evidence did not disclose any negligence on defendant's part and that the proximate cause of the injury was an act of the decedent. In that case there was evidence that the decedent was operating a power shovel in the process of widening a state highway; that the shovel came in contact with a farmer's telephone wire which was strung upon the same poles as were the high voltage lines of the defendant, some 12 feet below the high voltage wires and the same distance above the ground. At some distance from the point of accident a pole owned by defendant had broken off at a point above the telephone line and as a consequence the high voltage wire sagged and came in contact with the telephone wire and charged it with high voltage current. It was shown that the pole which had broken off was nothing but a hollow shell and in that condition was visible upon the most casual inspection; and what is more, that there had been no inspection thereof for more than four

years prior to the accident. Moreover, more than five months prior to the accident the state had notified the defendant to remove its pole line from the state's right of way as the line would not only interfere with construction, but was within the line of the projected highway. The written notice given by the state was offered merely to show the defendant had notice that construction work was about to begin and that despite such notice the defendant did not even then inspect its own poles—an inspection which would have disclosed a duty on its part to remedy an existing defect. The court did not intimate, much less hold, that the failure to obey the notice was negligence.

Cases far more apropos to the facts recited in the complaint, as we view those facts, than those cited by appellant are *Stackpole* v. *Pacific Gas & Elec. Co.*, 181 Cal. 700 [186 P. 354]; *Sweatman* v. *Los Angeles Gas & Elec. Corp.*, 101 Cal.App. 318 [281 P. 677]; *Hauser* v. *Pacific Gas & Elec. Co.*, 133 Cal.App. 222 [23 P.2d 1068]; *Dresser* v. *Southern Cal. Edison Co., Ltd.*, 28 Cal.App.2d 510 [82 P.2d 965].

For the reasons stated the judgment should be and it is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied March 5, 1951, and appellants' petition for a hearing by the Supreme Court was denied April 12, 1951. Carter, J., voted for a hearing.